### TOWN OF LEMINGTON *v.* ANDREW BLODGETT.

*Record.   Evidence.   Town Officers.   Intoxicating Liquor.*

A record of the warning of a town meeting and of the proceedings of the meeting held agreeably thereto, is sufficient *prima facie* to show that the warning was in fact posted up as required by law.

The law does not require selectmen to be sworn.

Parol evidence is admissible in behalf of the town to show that the selectmen elected, acted as such during the year.

The official certificate of the town clerk is *prima facie* authentic, and papers certified by him are admissible in evidence without other proof that he was either elected to the office, or sworn.

The fact that the selectmen became personally liable for liquors purchased by them in behalf of the town for their town agency, and which were turned over to the agent, does not rebut the presumption that the liquors became the property of the town.

Lemington *v.* Blodgett.

THE plaintiffs' declaration contained counts in trespass and trover for the taking and conversion of a quantity of brandy and rum. Plea, the general issue with notice that the defendant, as deputy sheriff, attached said liquors as the property of Augustus Osgood, on a writ in favor of Lyman Lumbard and sold the same on an execution. On the trial, at the September Term, 1863, POLAND, Ch. J., presiding, the plaintiffs offered in evidence the record of the warning and proceedings of the annual March meeting in Lemington in 1862. The defendant objected to the same because it did not appear that said warning was legally posted according to the statute. The record was admitted in evidence,—to which the defendant excepted. It appeared by the record that Thomas Holbrook, Jr., John Cook, and Augustus Osgood, were elected selectmen for the ensuing year. The plaintiffs then offered parol evidence that said Holbrook, Cook and Osgood acted as selectmen for that year. This was objected to by the defendant but admitted,—to which the defendant excepted.

The plaintiffs' evidence tended to prove that for the year previous to the 7th of May, 1862, the defendant had been agent for the town of Lemington for the sale of spirituous liquors, under a contract with the selectmen. At the expiration of his agency the defendant had on hand some liquors which he had purchased during his agency for the previous year, with his own money, which said selectmen wished to procure to supply the agency for the ensuing year, and they accordingly perfected an arrangement with the defendant, and gave him a written obligation in the following words :

"Received of Andrew Blodgett, former agent, one barrel of rum at sixteen dollars and eighty-four cents, and eight gallons of brandy for thirty-six dollars, making in all the sum of fifty-two dollars and eighty-four cents, which we jointly and severally promise to pay him in one year from date and interest, he having paid for said liquors out of his own money, by agreement with the selectmen last year.

THOMAS HOLBROOK, JR., } *Selectmen of*
AUGUSTUS OSGOOD,            } *Lemington.*

May 7th, 1862,"

On the 8th of May, 1862, the selectman Osgood, the defendant, was appointed agent under an arrangement that he should receive as

compensation what the other selectmen should say his services were worth at the end of the year.

Osgood proceeded to sell as agent from the liquors procured of the defendant, and purchased some more with money received by him from the sales of liquors, but at one time not having money sufficient to purchase what he wished, he applied to Holbrook, the selectman, who advanced him ten dollars out of his own money, which Osgood repaid out of the avails of the sales of liquors.

Holbrook testified that Osgood applied to him as selectman, and that he advanced his own money because the town then had no funds.

After said liquors had been attached by the defendant, Osgood gave up his agency and the selectmen settled with him. He accounted for the profits of all sales and the selectmen allowed him five dollars for his services. Other facts are stated in the course of the opinion.

The plaintiffs conceded that the liquors were taken by the defendant and disposed of by him under precept against Osgood in the manner set up in his notice under his plea.

The court held and instructed the jury that if all the evidence was believed the plaintiffs were entitled to a verdict for the liquors taken by the defendant at their value when taken and interest thereon since. The jury returned a verdict for the plaintiffs. The defendant excepted to the directions given to the jury and to the refusal to direct a verdict for the defendant as requested. There was no evidence that the selectmen or other town officers of that year had ever taken the oath of office. The defendant's counsel claimed that none of their official acts were valid so far as the town was concerned unless that was shown, but the court overruled the objection,—to which the defendant excepted. It also appeared on the trial that said Osgood gave no bond to the town as agent, and that none was required by the selectmen. It also appeared that after the liquors were attached by the defendant and after this suit was brought the town paid to the defendant the amount specified in the writing given to him by the selectmen.

———— *Barker*, for the defendant.

*Ira A. Ramsey* and *Wm. Heywood*, for the plaintiff.

BARRETT, J. The record of the warning, dated the 18th of February, for a meeting the 4th of March, and that the inhabitants met

agreeably to the above notification, and thereupon chose all their town officers, and voted all their taxes, is sufficient, *prima facie*, to show that the warning was, in fact, posted up in conformity to the provisions of the law.

The law does not require selectmen to be sworn. Even if it did, it would be presumed that they were so sworn, unless the contrary is shown, in cases where they undertake to protect themselves from personal liability by reason of their office.

It was proper, in behalf of the town, if there was need of it, to show, by parol, that the selectmen, who had been elected, acted as such during the year.

The official certificate of the town clerk is *prima facie* authentic, and it is not necessary, in this state, in order to render a record, or other paper certified by him, admissible in evidence, to show by other proof that he was either elected to the office, or sworn.

The only remaining questions arise as to the direction of the court to the jury, that if all the evidence was believed, the plaintiff was entitled to recover.

Osgood was appointed agent by the commissioner on the 8th of May, 1862, the year and office of the defendant as such agent having expired. Prior to this, and for the purpose of supplying the agent, who should succeed the defendant, two of the selectmen negotiated with the defendant, in respect to the liquor he then, as such agent, had on hand, and on the 7th of May the negotiation resulted in an agreement that he was to, and he did, deliver the liquor, for the purpose aforesaid, to said selectmen, one of whom was Osgood. On Osgood's being appointed agent, he took the liquors thus procured, and held and sold from them as such agent, up to the time it was attached by the defendant as constable, on a writ against Osgood. The question is, whether the liquor thus in the hands of Osgood, was the property of the town. In considering the evidence, it is proper to premise that the statute creating the agency and authorizing the sale of liquor by him, contemplates that the liquor shall belong to the town, and only to the town ; and, by the force of its provisions, as well as by its whole policy, it excludes the idea of the agent himself being such owner.

The evidence shows clearly that, in what the selectmen did, they were, in their own intention and belief, acting in behalf of the town. The paper they gave to the defendant, though by its terms it was a personal promise by themselves, still it is apparent from its recitals and the manner in which it is signed, that it was made by them in behalf of the town.

If they were thus acting for the town, the fact that they gave to the defendant their personal obligation to pay for the liquor would not affect the question of the ownership of the liquor. It was an undertaking in the character of sureties for the town,—they taking the hazard of being relieved from the burden of the liability thus assumed. It appears, though the fact may not be very material, that the town did pay for the liquor in discharge of the undertaking of the two selectmen.

The fact that the liquor went into the possession of Osgood has no tendency to show, or to constitute, him the owner of the liquor,—because, as before said, Osgood was the liquor agent of the town, and, under the law, the liquor held by him as such agent is to be regarded as the property of the town till it be made affirmatively to appear that it belongs to somebody else.

The various points made as to the effect of the manner in which Osgood's compensation was to be, and was fixed, and as to money furnished by Holbrook, one of the selectmen, to purchase more liquor for the agent to sell, and as to the mode in which the liquor in question had been procured by the defendant as the former agent, cannot be regarded as operating, in law, to countervail or invalidate the title of the town, as depending on the transaction shown by the evidence, by which the liquor came into the hands of Osgood as agent.

What the defendant testified, whether true as he claimed, or false, as Holbrook testified it was, viz: that the defendant refused to sell it to the selectmen on the credit of the town, so as to have the town made chargeable for it, and insisted that they should do as had been done the previous year,—*i. e.*, have an agent that would procure the liquors with his own money,—we regard as entirely immaterial; for the effect of the transaction must stand upon what was really consummated by it, as affecting the title to the liquor. The defend-

ant was not acting in behalf of, or in privity with, the town; and when he had parted with the liquor, his notions or will could have no effect upon the title as between the selectmen and the town. On the whole then we see no error in the direction given by the county court.

Judgment affirmed.