POGUE v. GRUBBS.

5-1880                                      327 S. W. 2d 4

Opinion delivered September 7, 1959.

*Marvin P. Watkins & Frierson, Walker & Snell-grove,* for appellant.

*Howard & McDaniel,* for appellee.

J. SEABORN HOLT, Associate Justice. This appeal involves an election contest. Appellant, Pogue, and appellee, Grubbs, were candidates for the office of Constable in the Democratic Primary Election on August 12, 1958. The official election returns as properly certified showed that appellant received 257 votes and appellee 252. In apt time, appellee, Grubbs, filed a complaint in the Poinsett Circuit Court in which he alleged that he had received a majority of all legal votes cast and should be declared the nominee. Appellant answered denying appellee's allegations and prayed that the official returns, as above indicated, be upheld. A trial resulted in a finding by the court that the correct result of the election showed that appellant, Pogue, had received 207 votes and appellee, Grubbs, 225 legal votes and declared appellee the nominee. From the judgment is this appeal. For reversal appellant says: (a) The burden of proof rested on appellee, the contestant, to show that he received a majority of the legal votes cast. (b) The integrity of the ballots was destroyed, and the court erred in considering the ballots to determine the result of the election. (c) Appellee failed to sustain the burden of proving that he received a majority of the legal votes cast.

Our rule is well established that in an election contest the official returns are *prima facie* correct and the burden is on the contestant (appellee here) to show to the contrary by affirmative proof. "The official returns of the election are *quasi* records, and are *prima facie* correct. The burden is upon the contestant to show by affirmative proof that they do not speak

the truth. * * * All the ballots cast by the voters and returned by the proper officers are presumptively legal, and their verity is not impeached by showing that contestant received a majority of the votes cast by persons who had become of age since the last assessing time. In order to succeed, he must prove that he received a majority of all the legal ballots cast at the election.'', *Tucker* v. *Meroney*, 182 Ark. 681, 32 S. W. 2d 631, and in *Connelley* v. *Vester*, 186 Ark. 393, 53 S. W. 2d 861, we re-announced this rule as follows: ''. . . since the official returns of the election are *quasi* records and stand with all the force of presumptive regularity until overcome by competent evidence, all the ballots cast by the voters and returned by the proper officials are presumptively regular, in order to . succeed, the contestant must prove that he received a majority of all the legal ballots cast at the election . . .''

The record shows that after appellee had completed the introduction of all of his testimony, appellant filed a demurrer to appellee's evidence which the court overruled. Whereupon appellant declined to plead further, or to offer any evidence, but elected to stand on his demurrer. The court then found from appellee's evidence that appellee, Grubbs, had received 225 legal votes and the appellant, Pogue, 207, and declared Grubbs the nominee.

In a situation such as here presented, our long standing rule is settled that if we find any substantial evidence to support the judgment of the trial court, we must affirm it. We said in *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d 225, ''The question may arise either in equity cases, where the chancellor is the arbiter of the facts, or in cases tried at law without a jury, where also the trial judge decides all issues of fact. By the overwhelming weight of authority it is the trial court's duty, in passing upon either a demurrer to the evidence or a motion for judgment in law cases tried without a jury, to give the evidence its strongest probative force in favor of the plaintiff and to rule against the plaintiff

only if his evidence when so considered fails to make a *prima facie* case." Citing many cases. Appellee's complaint alleged and appellant's answer admitted that the official returns, as indicated, showed that Pogue received 257 votes and Grubbs 252, so obviously any net change of only 6 votes in favor of Grubbs would make him the winner. The complaint alleged and appellant's answer admitted that 15 voters (8 in the "North Box" and 7 in the "South Box"), naming them, all cast their votes for Pogue and were counted for him. Grubbs challenged the legality of these 15 votes. He introduced the printed poll tax list which showed that not one of the above 15 voters appeared on that list. Appellant offered no evidence to rebut this showing, therefore, this proof of appellee made a *prima facie* showing that said votes were illegally cast and this shifted the burden to appellant to show their validity which he utterly failed to do. We said in *Wassell* v. *Sprick,* 208 Ark. 243, 185 S. W. 2d 939, "It will, therefore, be seen that we have already held that evidence showing that certain named voters do not appear on the printed list makes a *prima facie* case that such votes are illegal and that the burden shifts to the contestee to show that they are legal by 'other evidence' mentioned in the statute. But, says appellee, we have many times held that the returns of the election officials are presumptively correct and that said presumption should not be overcome by the mere showing that the names do not appear on the printed list. We have held that a presumption of verity attaches to the returns of the election officials, but we have also held in *Purdy* v. *Glover, supra,* that proof that the names of certain challenged voters do not appear on said list makes a *prima facie* case of the illegality of such votes and that the burden then shifts to the contestee to show their legality as provided by said statute, thus holding, in effect, that the presumption of verity of the returns has been overcome. *Wilson* v. *Luck,* 203 Ark. 377, 156 S. W. 2d 795.

"Appellant also says that the allegation in the complaint, the first quoted above, that many votes were cast and counted for appellee by persons who were not

qualified electors was insufficient to support proof that they were not found on the printed list. We think it is, but conceding that it was indefinite and uncertain in this respect, a motion to make more definite and certain would have reached the defect, and appellant could have amended by stating that they were not qualified electors because their names did not appear on the printed list. But no such motion was made.'' Since there was substantial evidence, therefore, to support appellee's claim that these 15 votes were illegally cast, they should be and must be discarded from appellant's 257 votes, leaving Grubbs the winner by 10 votes.

After examining all the evidence presented, which we do not attempt to analyze here, we have concluded that the trial court was warranted in refusing to hold that the integrity of all the ballots had been destroyed by alleged misconduct on the part of the election officials, and in proceeding to consider those legally cast in determining the result of the election. We hold that appellee has sustained the burden of proof that he received a majority of the legal votes cast.

Affirmed.